Excuse me. The last case on for argument is Martin v. Town of Simsbury. He was here. I saw him. Oh, okay. Oh, he's coming back. Thanks, Victor. Good morning, honors. Good morning, Mr. Martin. I'm the appellant pro se. I'm here to ask you to reverse the decision of the district court which dismissed my case for rapeness in a civil rights slash land use case. Just quickly, I'm going to say I'm not a lawyer. I'm not even an academic. I'm a pro se. I'm a builder. Bear with me if you can. I'm also a veteran to services sworn to uphold the Constitution. That's mainly why I'm here today. As a builder, I've been economically devastated by the actions of defendants. And as much as I'm disgusted by their behavior, I'm very proud that I'm able to be here today and plead my case. You know, we're focused on the court's decision. I am, your honor. I'm not an attorney. Right. Williamson County and other cases like it that were thrown out for rapeness. Almost all of them that I've read and they never applied for a variance and says it right in the decision. I did apply for a variance. First, I applied to the ZBA, Zoning Board of Approvals, to say, no, the decision of the zoning officer is wrong. And they had the town attorney and the zoning officer there were there. They just looked at them and gave them their opinion and they went with it, which is normal. And in the state of Connecticut, when you appeal to the Superior Court a decision of a zoning officer, you have to show that their decision was not wrong, but that their decision was wrong based on what they were given. And based on what they were given, it wasn't wrong. Because they were given the town attorney to tell them they ruled against them and the same zoning officer saying they'll rule against them. So, uh. Can I ask a question? Sure. Have you sought any kind of approval from the Conservation Commission about building on the property because of this dispute about the official map, the wetlands, and whether you're actually on wetlands or not? Yes, your honor. I asked them to give me a, um, I asked them to decide whether or not they were going to hold the unofficial map to me. Hold you to meeting that? To my land. Are you responsible under the unofficial map? That's correct. And the answer was? Yes, they are. And, but my case really, the conservation issue and the inverse condemnation count are really different because I wasn't really claiming the inverse condemnation was based on zoning. If it's not a building lot at all, how much wetlands are on there or aren't on there doesn't come into play because it's not a building lot so you can't build anything on it. I'm sorry. Isn't the wetlands problem still an unresolved problem with respect to your building lot? Well, if it is a building lot, it is an unresolved problem, but currently it's not a building lot at all. And, um, the court relied upon, hung their hat, the district court hung their hat on an affidavit by the assistant planner where he says in his affidavit that he suggested I investigate a rear lot subdivision for this property. A ludicrous idea and it was, it was concocted by a shrewd town attorney who knew this was going to get to this spot. They also, um, cite a, um, the state case. There was a state case, um, that's parallel to this that was dismissed for the same reasons. That case is under appeal as well. Um, so I wouldn't say two wrongs make a right. Um. Oh, go ahead. I'm sorry. The one other, uh, Williamson hoop that I just want to confirm either has or has not been cleared, but you made some application through an inverse condemnation proceeding for, uh, compensation through the state. I did. And what is the status of that? It's under appeal. It was denied. It was denied. Well, I made a demand to the town, a notice of demand, and then I brought it to the state and it was denied for the same reasons. Exact same case under Williamson. The exact same affidavit was used in that case through the town attorney where this assistant planner says he, we suggested he go for a rear lot subdivision. Which I know you can't use it today, but while this proceeding was pending, I went to apply for the rear lot subdivision. It was denied forthwith. Um, because it makes no sense. You say it's on appeal. It's on appeal in the state. It's at the appellate level in the state court. Inverse condemnation. Yes. It's on appeal in the state court as well. I didn't appeal at the time that they wrote that in the, um, in their brief and their decision. I, I, when she initially denied it, there was things about the case that weren't. She being. The judge. I'm sorry. Um. Judge Hall. Judge Elgo in the state. Oh, okay. When she did not, when she, Judge Hall used the state case in reference to her decision. And I didn't appeal immediately that decision because there were aspects of the case that were still pending. So I filed a notice of appeal, intent to appeal. And it was only about three months ago that I actually filed the appeal. Can I ask another factual question? Sure. The frontage requirement. That's the issue. Yeah. So did, it's 200 feet, is that right? That's correct. And did that exist when you obtained the property? It did. It did. Um, and so you were kind of aware that that was going to be an issue. No, Your Honor. First of all, the, the lot, the lot was created with a paper road that shows 200 feet of frontage. Uh-huh. And it was taxed as a tax lot at $3,200 a year. Um, it was immediately after my denial of my variance that they reduced the taxes to $1,200 a year. Because they also thought, well, now it's no longer a building lot. But at the time, um, the paper road is what I believe to be my frontage. And normally when you get a subdivision that isn't- When you say paper road, could you just clarify that for me, please? I'm sorry. Don't apologize. I just- Um, a paper road, when you- Plotted? It's plotted. Okay. I have a map that's signed and approved by the town planner showing a paper road. And he wouldn't sign and approve it if he didn't see that I met all the aspects of them. He then retires, unfortunately. And this all comes into play. So he- And not for- I don't want to use any- This is sort of an ego-driven fight with the town. And not my ego. I'm economically devastated by it. But their ego is saying, basically, it started with the health district when they said that- And you see, even though they're no longer defense in the case, they had said, Well, we want you to- We think your engineer lied about his findings on the property. And that led to- It rolled over to, we're going to show you. Just- I'm sorry, Your Honor. Back to the legal point. Sure. So there was a 200-foot frontage requirement when you bought the property. You thought it was satisfied based on what the plat showed. Yes, Your Honor. It turned out not to be adequate. Yes. In fact. And now you're being told to investigate the possibility of a rear lot variance. But that wouldn't cure the 200-foot problem. No, it wouldn't, Your Honor. Right. Is that right? That's correct. And I know there's a two-prong test. And we'll get to the- I just want to quickly get to the big issues, the two-prong test that Williamson County has. When a town suggests a remedy, there has to be a two-prong test at the lot. In his affidavit, Mr. Glidden says, well, he could use that property for farming. It has to be in the prescribed use of the property as a building lot. On the second prong, my understanding is that the Supreme Court has just undertaken to review the second prong. They've just granted certiorari or they've accepted a review in a case- I didn't know that. About whether they're going to continue to require that the second prong seeking compensation be met. But that likely wouldn't be argued until next fall and not heard until next or decided until next year sometime. Right. I don't think this case would settle anytime soon. We had 22 offers of settlement. Not one of them all rejected without a counter. In the Superior Court case, the judge asked us to have a non-binding mediation conference with the land-use judge. They refused. You've made settlement offers and they've declined. Twenty-two. Twenty-two. Everything you can think of. This is my livelihood and I've been . . . Just to be clear and following up on what Judge Carney was asking and what I asked earlier, you have gone through an inverse condemnation proceeding seeking compensation and you have been denied at the first stage. Sorry. Not only administratively but also at the state level. Yes, Your Honor. Okay. And is there any further appeal of that available to you? It's in the appellate court. Does a . . . Okay. So you go to Superior Court in Connecticut. I went to Superior Court. Oh. Okay. And they threw it out for the same exact reasons. Oh. So it's in the Connecticut Court of Appeals? It is. Okay. Yes, Your Honor. Great. So I actually didn't see that in the record. I saw that you had filed a suit, I thought, in response to the denial of permits. And that had been dismissed for failure to exhaust. It was. And it was also an inverse . . . You were seeking compensation, so you were seeking a condemnation? Yes. Okay. And as I explained, I didn't appeal. I mean, to be honest with you, I didn't have the money to file the appeal. But I filed a notice of intent to appeal. And when I had the money, I filed the appeal. So that's on appeal now. That was separate from your wetlands issue? It was completely separate from the wetlands issue. And the wetlands issue is really . . . I'm just . . . My wetlands issue in this case was that they're picking on me. Like, I don't want to quote law because I'm not a lawyer, but Willowbrook versus Olick. And they're making me do something . . . This lot had wetlands on it. There's been three official maps of the town of Sainsbury, wetlands maps. Wetlands were on this map for two. They removed it from the official map. No wetlands. And they go by the official map. You walk in to get a building permit in the town of Sainsbury. They look at the map. They go, you're not on it. Here you go. Here's your permit. Me . . . They're making me go to do a wetlands investigation and go to the wetlands board. I'm like, why am I having to do this? They're picking on me. I don't . . . Your point is, it's not on the official map there. Right. And it was removed from the official map via a meeting, I believe. They have no records. And I said, whose fault is that? Is that my fault you have no records? Mr. Martin, thank you for coming down here today. Thank you, Your Honor. I really appreciate it. We will reserve decision in this case, but we'll try to get you something fairly soon. Thank you very much. Thank you. I'll ask the clerk please to adjourn court. Court is adjourned.